# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **DARYL LAMONICA SIMS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-02132-CLM |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Daryl Lamonica Sims ("Sims") seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Sims' application in an opinion written by an Administrative Law Judge ("ALJ"). Sims asks this Court to find that the ALJ erred in two ways: (1) the ALJ did not properly develop the record, and (2) the ALJ's finding on Sims' Residual Functional Capacity ("RFC") was not supported by substantial evidence. As to his first argument, Sims also alleges that the SSA Appeals Counsel did not adequately review the additional evidence he provided. But as detailed below, neither the ALJ nor the SSA Appeals Council erred below, and the court thus **AFFIRMS** the SSA's denial of benefits.

I. **Statement of the Case**

   **A. Sims' Background and Impairments**

Sims was born on December 11, 1972 and was 42 years old (which is defined by 20 CFR 416.963 as a younger individual) on the date his application was filed. R at 35. Sims completed the tenth grade, earned a GED, and has no past relevant work. R. at 35, 503, 590, 605. Before applying for SSI, Sims served 22 years in prison. R. at 47. Sims did not participate in a work program while in prison. *Id*.

Sims testified at his hearing that he experiences back and heart problems, the primary factors preventing him from working. *Id*. Sims experiences lower back pain that requires him to lay down often. *Id*. When he sits up, he experiences pain if he is not on his medication. *Id*. But when Sims is on his medication, he experiences drowsiness. *Id.*

Sims also suffers from cardiomyopathy, which runs in his family. R at 48. Sims takes at least three medications for cardiomyopathy. *Id*. While his ankles do not typically swell, he sometimes experiences a burning sensation in his feet. *Id*.

Sims also has diabetes and asthma. R. at 49. Sims takes daily medication for his diabetes. *Id*. Sims' asthma is triggered by dust and freshly cut grass, and he sometimes uses an inhaler as often as two or three times per day. *Id*. Sims testified at his hearing that he no longer experiences migraines or sinus infections. R. at 49-50. If he happens to get a sinus infection, he simply takes over-the-counter

medication. *Id*. Sims also testified that he no longer takes medication for ADD/ADHD and has not done so for 22 years. R. at 50-51.

Sims is approximately 6'7" and 300 pounds. R. 34. At his height and weight, Sims is considered obese. *Id*. While no physician has ever attributed any limitations to Sims based on obesity, the ALJ acknowledged that obesity can sometimes exacerbate subjective complaints of pain. *Id*.

Lastly, while he was incarcerated, Sims had a transient ischemic attack ("TIA"). R. at 51. He sometimes experiences numbness in his left hand, which may result from the TIA or may be a side-effect of one of his medications. *Id*. At his hearing, Sims testified that he experiences no issues or impairments other than those described above. *Id*.

Sims does not have, and has never had, a driver's license. R. at 50. While Sims used to shop occasionally, he no longer does so because of his back pain. *Id*. On a typical day, Sims sleeps, reads, and (when his back is not in too much pain) sits on the porch. *Id*. He lives with his mother and step-father. *Id*. He can go to church. *Id*.

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's residual functional capacity, or "RFC." A claimant's RFC describes his ability to perform physical and mental work activities on a sustained basis. Step 5 is a critical step here, as Sims challenges the ALJ's determination of his RFC.

### C. Sims' Application and the ALJ's Decision

The SSA reviews applications for disability benefits at three stages: (1) initial determination, including reconsideration, (2) review by an ALJ, and (3) review the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4) (2019).

Sims applied for SSI benefits on November 3, 2015, claiming he became unable to work on February 1, 1987 due to disability. R. at 28. Sims reported that he was unable to work due to cardiomyopathy, high blood pressure, asthma, sinus infections, attention deficit disorder, lower back problems, neuropathy, and issues due to a stroke. The SSA denied his claim. R. at 28.

Sims then requested a hearing with an ALJ, which he received. *Id.* Several months later, the ALJ issued an opinion denying Sims' application. R. at 25-36.

The ALJ found at Step 1 that Sims had not engaged in substantial gainful activity from the date of his application, November 3, 2015, through the date of the hearing, October 18, 2017. R. at 30.

The ALJ found at Step 2 that Sims suffered from the following severe impairments: transient ischemic attacks, history of cardiomyopathy, congestive heart failure, asthma, degenerative disc disease, obesity, and diabetes. *Id.* On top of these severe impairments, the ALJ found that Sims suffers from the following medically determinable impairments: migraine headaches, hypertension, a history of ventricular bigeminy, and sinusitis. R. at 31. But the ALJ found that these

impairments "are non-severe and cause no more than minimal functional limitations of [Sims'] ability to perform work-related activities." *Id*. As for Sims' allegation that he suffered from ADD/ADHD, the ALJ found that "[Sims] does not have any mental health treatment or any known diagnosis of an attention deficit disorder," and thus "[Sims'] alleged ADD/ADHD is not medically determinable." *Id*.

At Step 3, the ALJ reviewed the medical evidence and found that none of Sims' impairments, individually or combined, met or equaled the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 31. As a result, the ALJ next had to determine Sims' RFC.

The ALJ determined that Sims' had the residual functional capacity to perform light, unskilled work with multiple limitations. R. at 32.

At Step 4, the ALJ found that Sims could not perform his past relevant work, because he had no past relevant work. R. at 35. At Step 5, the ALJ found that, based on the testimony of the vocational expert, and "considering [Sims'] age, education, work experience, and residual functional capacity," Sims was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 36. These jobs included laundry worker, cashier, and mail clerk. *Id*. The ALJ thus found that Sims was not disabled and not entitled to benefits. *Id*.

Sims requested an Appeals Council review of the ALJ's decision. R. at 1-4. The SSA Appeals Council will review an ALJ's decision only for very particular

reasons, and the Council found no such reason for review under the rules. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and thus the decision subject to review by this Court.

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

In reviewing any of the ALJ's factual findings, 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). So even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.

That said, no decision is automatic, for "despite th[e] deferential standard, it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th

Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).

**III.     Legal Analysis**

Sims argues the ALJ erred in deciding he was not disabled for two reasons. First, he argues the ALJ failed to properly develop the record. Specifically, Sims alleges that he did not effectively waive his right to counsel and that the ALJ promised to obtain his prison medical records, which the ALJ did not do. Second, Sims argues that substantial evidence does not support the ALJ's determination of his RFC. The Court disagrees.

**I.     The ALJ did not fail to properly develop the record.**

An ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). An ALJ's basic duty to develop the record rises to a "special duty" when an unrepresented claimant has not waived his right to counsel and is unfamiliar with hearing procedures. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). When an ALJ fails to develop the record, a remand is necessary if "the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. July 1981), *cert. denied*, 455 U.S. 912 (1982)); *see also Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the

[Commissioner] for further development of the record.")

Sims argues that he was unrepresented at his hearing and did not effectively waive his right to counsel. Thus, Sims argues that the ALJ had an elevated, special duty to develop a full and fair record and the ALJ failed to do so when he failed to obtain Sims' prison medical records.

1. <u>Sims effectively waived his right to representation; therefore, the ALJ had only a basic duty to develop the record.</u>

Despite his argument to the contrary, Sims effectively waived his right to representation at his hearing. Before his hearing, Sims was represented by counsel. R. at 652, 654. But Sims' counsel was unable to attend the scheduled hearing due to various conflicts, and when Sims' counsel informed Sims of his need to reschedule the hearing, Sims opted to represent himself at the hearing rather than reschedule the hearing. R at 502, 652-53, 654. The ALJ provided Sims with a Waiver of Right to Representation form, which Sims signed at his administrative hearing. R. at 571. On the form, Sims stated that he could read and understand the form, understood his right to representation, did not have any questions, and wished to proceed without a representative R. at 571. Sims confirmed that he voluntarily represented himself at his hearing in an affidavit dated June 1, 2018, stating:

> I hired Sonny Stein to represent me at the Social Security hearing. I understood he would be my personal representative at the hearing. I contacted Mr. Stein several times before the hearing to be sure he would be in attendance. The week before the hearing I talked to him and he said he had a conflict, that he had two other hearings and he could not represent me. I still wanted Mr. Stein to represent me. I talked to him the day before the hearing to ask whether he could represent me, and he again told me he could not represent me because he had two other hearings. Mr. Stein suggested that we continue the case so he could be there. I had waited so long for a hearing – 18 months – and I did not want to continue the hearing. I went to the hearing without an attorney, realizing that Mr. Stein would not represent me. I understood that I had the right to have an attorney present, but I knew if I wanted an attorney it would postpone the hearing probably at least six months.

Sims knowingly and voluntarily waived his right to representation; therefore, the ALJ's duty to develop the record did not rise to the level of a special duty.

   2.   Sims has not shown evidentiary gaps in the record resulting in clear prejudice.

Regardless of the ALJ's duty—basic or special—to develop the record, Sims has identified no gaps in the record that are clearly prejudicial. Sims asserts in his briefing that the ALJ told Sims he would obtain Sims' prison medical records but failed to do so. But the hearing transcript shows that the ALJ never said he would obtain Sims' prison records, nor did Sims ask the ALJ to do so. R. at 45-52. The only evidence in the record suggesting that the ALJ mentioned Sims' prison records comes from Sims' own affidavit, in which he testified:

> During the hearing, the Judge said that he would have the records sent to him "overnight." I believed he was talking about the prison medical records.

Moreover, while Sims summarily concludes that his prison medical records "contain many diagnoses not considered by the ALJ," (Doc. 13, p. 15), a diagnosis alone says nothing about the severity of a condition. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). Further, as the Commissioner observes in his briefing, Sims' prison records pre-date his SSI application date. R. at 56-121, 154-498. In fact, many of Sims' records are from 1998 through 2013 and are thus both remote from his application date and well outside the twelve-month period for which the Agency must develop a medical history. R at 56-66, 203-24, 262-498. Thus, they do not pertain to the relevant period. *See* 20 C.F.R. §§ 416.330, 416.335; *see also* Social Security Ruling (SSR) 18-1p, 2018 WL 4945639, at *3 (S.S.A.); *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.")

Sims' records that do fall within the relevant period do not show that he had any additional functional limitations during that time, but simply show that he was prescribed medication and sought treatment for conditions including back pain and cardiac problems in the year before his application for SSI. R. at 67-121, 154-202,

225-61.[1] Sims has demonstrated no evidentiary gaps in the record that result in clear prejudice.

   3. <u>The Appeals Counsel properly denied Sims' request for review.</u>

Lastly, Sims argues that when he submitted the subject records that were not before the ALJ to the AC, they improperly denied his request for review. Specifically, Sims argues that the AC did not adequately review the additional evidence because it offered no material basis for denying review, but rather perfunctorily adhered to the ALJ's decision. The Court disagrees.

When the AC denied review, it explained that it had considered Sims' proffered reasons for challenging the ALJ's decision, along with the supplemental records, and determined that there was no basis for changing the ALJ's decision. R. at 1-6. This satisfies the AC's burden. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 781-82, 785 (11th Cir. 2014) ("the Appeals Council is not required to explain its rationale when denying a request for review"); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852-53 (11th Cir. 2015) (distinguishing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).

---

[1] Sims' chest x-rays from 2015 showed no acute cardiopulmonary findings; his lumbar spine x-rays from 2015 showed mild degeneration at T12-L1 with no significant interval change; and his cervical spine x-ray from June 2015 was unremarkable. R. at 156, 158-61, 162-63. Sims' abdominal ultrasound from August 2014 was negative. R. at 164. Lastly, Sims' physical examination in September 2015, just two months before he filed his application, was unremarkable. R. at 169.

## II.   Substantial evidence supported the ALJ's conclusions on Sims' RFC.

Sims also argues that the ALJ erred in determining his RFC, because the ALJ's determination was based on an incomplete record. This argument is merely an extension of Sims' argument that the ALJ failed to fully develop the record, (*Supra*, Part I), and fails for the same reasons — that the AC properly concluded that the prison medical records did not create a reasonable probability of a different outcome and that Sims failed to show that he has any other functional limitations.

Sims also argues that the ALJ improperly relied on the Vocational Expert's ("VE") testimony, because the ALJ's hypothetical questions to the VE assumed that Sims could perform light, unskilled work—his RFC. Essentially, because Sims disputes the validity of the ALJ's determination of his RFC, he also disputes the validity of the VE's testimony premised on his determined RFC.

To rely on a VE's testimony, the ALJ must pose hypothetical questions that reflect the claimant's impairments and include those functional limitations supported by the record. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Here, the ALJ posed hypothetical questions consistent with his determination of Sims' RFC, R. at 32, 511-12, and the VE responded that an individual with such limitations could perform the jobs of laundry worker, cashier, and mail clerk, R. at 512, and that there are many such jobs in the national economy, R. at 512.

As discussed, Sims failed to establish that he has other functional limitations

that are inconsistent with the ALJ's determination of his RFC. The ALJ was thus not required to include any additional limitations in his hypothetical question to the VE. So Sims' challenge to the VE's testimony fails for identical reasons that his challenge to the ALJ's determination of his RFC fails.

After reviewing the entire record, the Court finds that the ALJ's determination of Sims' RFC was based on substantial evidence on record. Sims has not pointed the Court to objective medical findings that would compel imposing a more restrictive RFC determination in this case.

## Conclusion

The court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ's decision was supported by substantial evidence. The court thus **AFFIRMS** the decision of the SSA Commissioner. A separate order will be entered.

**DONE** and **ORDERED** this 29th day of June, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE